**In the Interest of S.N., S.M.N., and D.A.N., Children.**

No. 14–07–00161–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 5, 2009.

William B. Connolly, Houston, for appellant.

James R. Harris, Sandra D. Hachem, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and BROWN.

## OPINION ON REHEARING

LESLIE B. YATES, Justice.

We overrule appellant's motion for rehearing, vacate and withdraw our prior opinion and judgment dated October 14, 2008, and issue this opinion on rehearing and judgment in their place.

Appellant David Allen Neuenschwander, Jr. appeals from the trial court's order terminating his parental rights to his three children. In five issues, he challenges (1) the legal and factual sufficiency of the evidence underlying the termination findings, (2) the legal and factual sufficiency of the evidence supporting the trial court's findings of fact related to his paternity, and (3) the constitutionality of section 263.405(i) of the Texas Family Code. In his sixth issue, he asserts that if we reverse the trial court's termination of his parental

rights, we should also reverse the trial court's appointment of the Department of Family & Protective Services as sole managing conservator. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 25, 2005, DFPS received a referral alleging neglectful supervision and physical neglect of S.N., S.M.N., and D.A.N. by their mother, Angel Vidaure. When officers from the Baytown Police Department arrived at the home, they discovered that the children were home alone and had been so for several hours. After waiting forty-five minutes, during which time Vidaure did not return, the officers took the children to the police department. Thereafter, DFPS took the children into custody.

On November 28, 2005, DFPS filed an Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent–Child Relationship. The children were subsequently placed together in a foster home. At the time, the daughters, S.N. and S.M.N, were eight years old and six years old, respectively, and the son, D.A.N., was two years old.

At the time DFPS took the children into custody, appellant was in jail serving a seventy-five day sentence for driving with a suspended license for failure to maintain liability insurance. He was released from jail on December 8, 2005 after serving thirty-five days. On January 9, 2006, appellant attended a Permanency Plan Team meeting during which a DFPS case worker reviewed appellant's family service plan with him. On January 19, 2006, appellant signed the plan which required, among other things, that he complete parenting classes, participate in individual therapy, and obtain and maintain stable employment or provide proof of disability. On

January 19, 2006, the court signed additional temporary orders that reiterated the requirements of the plan as well as ordered both appellant and Vidaure to complete all services outlined in the family service plans.

A bench trial was held on January 16, 2007. In the final termination order signed on February 6, 2007, the trial court terminated Vidaure's parental rights based on her voluntary affidavit of relinquishment. The court terminated appellant's parental rights based on Family Code section 161.001(1), subsection (N) for constructive abandonment and subsection (O) for failure to comply with the court-ordered family service plan and found that termination was in the children's best interest. The decree established appellant's paternity to D.A.N. only. It also terminated the parental rights of the unknown fathers of S.N. and S.M.N. based on Family Code section 161.002(B)(2)(a). DFPS was appointed sole managing conservator of the three children.

On February 20, 2007, appellant filed a motion for new trial and statement of appellate points. The following day, he filed a request for findings of fact and conclusions of law. On February 23, 2007, appellant filed his notice of appeal. On March 2, 2007, DFPS filed proposed findings of fact and conclusions of law with the court. On March 13, 2007, the trial court denied appellant's motion for new trial and issued findings of fact and conclusions of law.

## II. STANDARD OF REVIEW

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985). Due to the severity and permanency of the termination of parental rights, the burden of proof at trial is heightened to the clear and convincing standard. *See* Tex. Fam.

CODE ANN. § 161.001 (Vernon Supp.2008); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2002); *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re S.M.L.*, 171 S.W.3d 472, 476 (Tex. App.-Houston [14th Dist.] 2005, no pet.).

When determining legal sufficiency, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* However, this does not mean that we must disregard all evidence that does not support the finding. Because of the heightened standard, we must also be mindful of any *undisputed* evidence contrary to the finding and consider that evidence in our analysis. *Id.*

When reviewing a factual sufficiency challenge under the clear and convincing burden, the analysis is somewhat different in that we must consider all of the evidence equally, both disputed and undisputed. *See id.* We must consider whether the evidence is sufficient to produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegation sought to be established. *In re C.H.*, 89 S.W.3d 17, 26 (Tex.2002). We consider whether disputed evidence is such that a reasonable factfinder could not have re-solved that disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection (1) of 161.001 and that termination is in the best interest of the child under subsection (2). TEX. FAM.CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex.2005); *In re U.P.*, 105 S.W.3d 222, 229 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

## III. ANALYSIS

### A. Failure to Complete Family Service Plan

In his fourth issue, appellant challenges the trial court's termination of his parental rights because he contends the evidence is legally and factually insufficient to support termination under Texas Family Code section 161.001(1)(O). To terminate parental rights based on 161.001(1)(O), a trial court must find by clear and convincing evidence that the parent

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Here, appellant does not dispute that the children were in the custody of DFPS or that he did not comply with all of the requirements of the family service plan. Instead, appellant argues that DFPS cannot meet its burden of proof on the third element because the children were not removed from him as the result of abuse or neglect on his part. He asserts that the language, "as a result of the child's removal from *the parent* under Chapter 262 for the abuse or neglect of the child" in subsection (O) means that the parent who failed to comply with the court order must be the same parent whose acts or omissions caused the child to be removed and placed into DFPS's care.

DFPS counters that appellant's interpretation of subsection (O) imposes a requirement that the statute does not. It argues that appellant misreads the final phrase of subsection (O) which "merely indicates that it is a situation involving a 'child's removal from the parent under Chapter 262 for the abuse or neglect of the child.'" According to DFPS, if the legislature had intended to require specific proof that the parent who failed to comply with a court order is the parent whose abuse or neglect of the child warranted the child's removal, it could easily have done so.

■ Statutory interpretation is a legal matter subject to de novo review. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex.2002). The overriding goal of statutory interpretation is to determine the legislature's intent. *Cont'l Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex.2002). To glean legislative intent, we look first to the plain and common meaning of the words used by the legislature. *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex.2002); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). We begin with the plain language because we assume that the legislature tried to say

what it meant; therefore, its words should be the surest guide to its intent. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex.1999); *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 286 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd). It is a well-settled rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. *Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998). Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. *Id.* This rule complements another general statutory construction principle that courts should not insert words into a statute except to give effect to clear legislative intent. *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex.1995).

■ With the foregoing principles in mind, we conclude that subsection (O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect of the child warranted the child's removal. Had the legislature intended such a requirement, it could have easily provided that conservatorship be "as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child *by the parent.*" It did not do so, and we presume it did not do so for a purpose. *See Quick*, 7 S.W.3d at 123. Moreover, although no Texas case appears to have addressed this precise issue, we have identified at least two decisions in which termination of one parent's rights under subsection (O) was upheld where the abuse was committed by the other parent, thereby implying that subsection (O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect resulted in the child's removal. *See In re C.D.B.*, 218 S.W.3d 308, 309–12 (Tex.App.-Dallas 2007, no pet.) (upholding

termination of mother's parental rights under subsection (O) where mother failed to comply with provisions of court order establishing actions necessary for return of children, who had been in DFPS conservatorship for not less than nine months as result of their removal under Chapter 262, for father's abuse of one of the children during mother's absence); *see also In re S.M.*, No. 04–04–00194–CV, 2005 WL 418540, at *2–4 (Tex.App.-San Antonio Feb.23, 2005, no pet.) (mem.op.) (finding sufficient evidence to support termination of mother's parental rights under subsection (O) where mother failed to comply with family service plan outlining requirements to obtain return of children, who had been in DFPS conservatorship for not less than nine months as result of their removal for boyfriend's physical abuse of one of the children).

DFPS also contends that there is no authority for appellant's claim that subsection (O) requires proof of abuse or neglect and cites to *In re J.F.C.*, 96 S.W.3d 256 (Tex.2002) in support of its argument. However, this argument was recently rejected in *In re A.A.A.*, 265 S.W.3d 507, 513–15 (Tex.App.-Houston [1st Dist.] 2008, pet. denied).[1] In *A.A.A.*, the appellant challenged the termination of her parental rights under subsection (O) on the grounds that her child was not removed from her as a result of abuse or neglect but solely because she had been arrested and was unable to return to the child at the shelter. *See id.* at 513. DFPS argued, *inter alia*, that the supreme court had previously addressed the issue of whether "abuse or neglect" are requirements of section 161.001(1)(O) in *J.F.C. Id.* at 514.

In *J.F.C.*, the court held that section 161.001(1)(O) was conclusively established but did not address whether the child at issue was removed for abuse or neglect. *See In re J.F.C.*, 96 S.W.3d at 278–79. DFPS argued that, by not mentioning that the child was removed for abuse or neglect, the *J.F.C.* court eliminated abuse or neglect as a required element of subsection (O). *See In re A.A.A.*, 265 S.W.3d at 514. The *A.A.A.* court disagreed, noting that the specific question of whether a child must be removed under Chapter 262 for that child's own abuse or neglect was not brought before the court in *J.F.C. See id.* Instead, the court had been asked to address the constitutionality of the broad-form jury charge on parental termination used by the trial court. *In re J.F.C.*, 96 S.W.3d at 277. The court did not reach this issue, however, because it held that the evidence established parental conduct pursuant to section 161.001(1)(O) as a matter of law. *Id.*

After noting that several decisions had treated a finding of abuse or neglect of the child to be a required element, the court in *A.A.A.* concluded that "because the supreme court did not expressly hold [in *J.F.C.*] that 'removal under Chapter 262 for abuse or neglect of the child' is *not* an element of subsection 161.001(1)(O), we must adhere to the unambiguous language of the statute." *In re A.A.A.*, 265 S.W.3d at 515 (emphasis in original). The court then proceeded to consider whether DFPS had proved by clear and convincing evidence that the child was removed under Chapter 262 for abuse or neglect. *Id.* at 515–16.

1. In his Response to Appellee's Brief, appellant cites to the court's original opinion rendered in this case, *In re A.A.A.*, No. 01–07–00160–CV, 2008 WL 201033 (Tex.App.-Houston [1st Dist.] Jan. 24, 2008). However, the court subsequently granted DFPS's motion for rehearing, withdrew its original opinion, and issued *In re A.A.A.*, 265 S.W.3d 507 (Tex. App.-Houston [1st Dist.] 2008, pet. denied), in its stead.

We agree with the court's analysis in *A.A.A.* and, likewise, conclude that "abuse or neglect" is a required element of section 161.001(1)(O). Thus, we must determine whether the evidence is sufficient to support the trial court's finding that S.N., S.M.N., and D.A.N. were removed because of abuse or neglect.

On November 25, 2005, DFPS received a referral alleging neglectful supervision and physical neglect of the children by Vidaure. Pursuant to section 262.104, which allows for emergency removal without a court order, DFPS took the children into custody. *See* TEX. FAM.CODE ANN. § 262.104 (Vernon Supp.2007). Attached to DFPS's Original Petition is an affidavit, signed by a DFPS case worker on November 28, 2005. In it, the case worker stated that when officers from the Baytown Police Department arrived at the home at 2:15 p.m., they found the children home alone, as well as two cat litter boxes overflowing with cat feces, cat feces on Vidaure's bed, a soiled mattress in the children's room, dirty dishes in the sink, and spoiled milk in the refrigerator. The children told the officers that their mother had left at 2:00 a.m., returned to leave doughnuts, and then left again. After waiting forty-five minutes for Vidaure, the officers left with the children. Vidaure arrived later at the police department and was arrested for abandonment of the children. When questioned by one of the officers as to her whereabouts, Vidaure told the officer that she had gone to the store to purchase milk. However, the officer informed the case worker that there was a corner store that sells milk approximately 300 yards from the house, and that she had not been in there. Vidaure later told the case worker that she had left home at 2:30 p.m. to get some diapers for D.A.N. and that a neighbor had checked in on the children from time to time. The trial court subsequently issued a temporary order naming DFPS as the children's temporary managing conservator, finding, in part, that "there was a danger to the physical health or safety of the children" and that "there is a substantial risk of a continuing danger if the children are returned home." We conclude that the evidence is legally and factually sufficient to support the trial court's finding that the children were removed under Chapter 262 for neglect. We overrule appellant's fourth issue.[2]

---

2. In his Motion for Rehearing, appellant contends the affidavit could not be considered as evidence to support the trial court's judgment because DFPS never offered it into evidence at trial. DFPS filed the affidavit to provide proof of neglect in support of its initial request for emergency removal of the children, and the trial court relied upon the affidavit in granting the request. In its response, DFPS counters that the trial court and this court could take notice of the fact that the affidavit had been provided as proof for its request for emergency removal. In support of its position, it cites two opinions in which the appeals courts considered the affidavits attached to DFPS's petitions in finding the evidence of abuse or neglect sufficient to uphold the trial courts' findings. *See In re A.A.A.*, 265 S.W.3d 507, 516 (Tex.App.-Houston [1st Dist.] 2008, pet. denied); *In re M.B.*, No. 07–04–0334–CV, 2004 WL 2867544, at *2 (Tex.App.-Amarillo Dec.14, 2004, no pet.) (mem. op., not designated for publication). However, we need not decide this issue because the evidence in question also appears in the family service plan-which was admitted into evidence at trial without objection-in nearly identical language. Moreover, while questioning DFPS supervisor Aisha Jones about appellant's failure to comply with the plan requirements, appellant's trial counsel stated, "The main thing [appellant] is here for are things the mother did, right? She had a messy apartment. She didn't change the cat's litter pans. She walked off to get milk and abandoned the children." Thus, error, if any, was harmless. *See In re W.E.C.*, 110 S.W.3d 231, 248 (Tex. App.-Fort Worth 2003, no pet.) (concluding any error in admitting substance of mother's privileged communications to drug treatment

## B. Best Interest of the Child

██ In his fifth issue, appellant challenges the legal and factual sufficiency of the trial court's finding that termination was in the children's best interest pursuant to section 161.001(2).

██ There is a strong presumption that the best interest of the child is served by keeping the child with its natural parent, and the burden is on the Department to rebut that presumption. *In re S.M.L.,* 171 S.W.3d at 480; *In re U.P.,* 105 S.W.3d at 230. The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interest of the child. *In re A.A.A.,* 265 S.W.3d at 516. In reviewing the sufficiency of the evidence to support the second prong, a court examines several factors, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex.1976); *In re S.M.L.,* 171 S.W.3d at 480; *In re U.P.,* 105 S.W.3d at 230. This list is not exhaustive, nor is evidence required on all nine factors to support a finding terminating a parent's rights. *Holley,* 544 S.W.2d at 372; *In re U.P.,* 105 S.W.3d at 230.

With these considerations in mind, we review the evidence below.

We begin by considering the desires of the children. Connie Patterson, the therapist of S.N. and S.M.N., testified that S.N. and S.M.N. have each told her that they want to move forward and have discussed the possibility of staying in their foster home on a permanent basis. Two weeks before trial, S.N. told Patterson that she had "something really good" to tell her—her foster parents wanted to adopt all three of them. Patterson testified that when S.N. gave her the news, S.N. was "extremely excited, jumping all around." She further testified that S.N. and S.M.N. have never talked about appellant unless she mentions him first and that they consider their foster parents to be their parents. Likewise, Patterson testified that D.A.N. is completely attached to his foster parents and believes they are his parents. She believes that although the children have ambivalent feelings about appellant, and it would be sad for them to lose their parents, they are ready to move forward. Several months before trial, S.N. and S.M.N. also told Ed Thompson, the court-appointed children's advocate, they wanted to be adopted by their foster parents. Thompson testified that, at the time of trial, the children had not mentioned appellant in over seven months.

We next examine the children's present emotional or physical considerations now and in the future. Patterson testified that when she first met S.N. and S.M.N., they were traumatized and very sensitive to the abandonment issue and that it was very difficult to speak to them without them crying. S.N. worried a lot about the instability of their situation. According to Patterson, S.N. was a very "parentified" child,

---

counselor was harmless, in proceedings to terminate mother's parental rights, where other evidence, including mother's testimony

and that of caseworkers, therapists, and friends, established same facts).

*i.e.,* she acted as if she were her younger siblings' mother, and S.M.N. and D.A.N. deferred to her as if she were their mother. However, Patterson also testified that the children's foster parents are working with S.N. on her tendency to give her brother and sister instructions and that S.N. is making consistent progress in that regard. She also testified that S.N. and S.M.N. were behind developmentally in school and that DFPS had received reports from their school regarding acting out behavior. In her opinion, the children would not sustain any permanent damage if appellant's parental rights were terminated. She further testified that she believed termination of appellant's parental rights was in the children's best interest because the children were in danger of developing reactive attachment disorder if they were returned to an unstable environment. Although she acknowledged that she did not know whether appellant was in an unstable situation, she testified that there was evidence presented at trial that concerned her. If appellant's parental rights were not terminated, she could prepare the children to return to him provided that they receive on-going therapy and that a system be put into place to ensure their safety and nurturing.

With regard to appellant's parental abilities, appellant was in jail for driving with a suspended license at the time DFPS removed the children on November 25, 2005. In February 2006, appellant was again arrested and served approximately eighteen days in jail. Appellant visited his children until April 2006 but did not visit them between April 2006 and the date of trial because he mistakenly believed that his visitation rights had been terminated.[3] If the children were returned to him, appellant testified he would upgrade his current one-bedroom apartment that he shares with his grandmother to a three-bedroom apartment. Appellant testified he is disabled from a work-related back injury and receives $711 in monthly disability payments. He planned to support his children with the disability payments and food stamps. Appellant would also have help caring for the children from his grandmother and has an emergency contact in his apartment complex who could drive to the doctor. Prior to his incarceration in February 2006, appellant had attended two or three parenting classes but did not complete the program and other aspects of the family services plan because he lacked transportation. Patterson testified that S.N. told her that she, rather than appellant, had been responsible for feeding S.M.N. and D.A.N., putting them to bed, and dressing them in the morning. DFPS supervisor Aisha Jones testified she was concerned that appellant was taking some potentially addictive medications for his back injury and also for anxiety, but she was unaware of any drug problem. Thompson testified that appellant was a very loving father and the children appeared to bond very well with him during the two family meetings he attended, but that his visits were inconsistent. The children eventually quit mentioning him and now consider the foster parents to be their parents.

---

3. During this last visit, appellant, his grandmother, Vidaure, and her boyfriend went to visit the children. Vidaure entered the building to talk to the children's case worker and, upon her return, she told appellant that their visitation was cancelled. As they stood outside talking, a security guard approached them, accompanied by the case worker, and told them to leave the premises. Appellant later learned that Vidaure's visitation had been cancelled because she had lice. Appellant did not visit his children again. He testified that he believed his visitation rights had been terminated, although he also testified that no one at DFPS told him that he could not see his children.

As for available programs, appellant testified that he receives food stamps and $711 in monthly disability income. With regard to the plans for the children, the foster parents have expressed a desire to adopt all three children. Patterson testified that the children are doing "superb" in their foster home and are becoming very well adjusted. Thompson, who saw the children regularly, testified that they were doing "exceedingly well" in their foster home.

Finally, we consider appellant's acts or omissions indicating that the existing parent-child relationship is improper and any excuses he has for his behavior. Appellant was incarcerated for a suspended driver's license at the time his children were removed in November 2005 and again in February 2006 for outstanding traffic violations. Appellant visited his children until April 2006, but his visits were inconsistent, and he did not visit them between April 2006 and the date of trial based on a mistaken belief that his visitation rights had been terminated. He subsequently tried to contact DFPS on a couple of occasions and left several messages for the case worker, but no one ever returned his call. He testified that his failure to complete parenting classes and other parts of the family services plan was due to a lack of transportation.

Viewing the evidence in the light most favorable to the judgment, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that the best interest of S.N., S.M.N., and D.A.N. would be served by termination of appellant's parental rights. Based upon our review of the entire record, we conclude that a fact finder could reasonably form a firm conviction or belief that the termination of his parental rights would be in the children's best interest. We therefore find the evidence legally and factually sufficient to support the trial court's finding. We overrule appellant's fifth issue.

Having overruled issues four and five with regard to the trial court's findings under section 161.001(1)(O) and the children's best interest, we need not address appellant's third issue challenging the trial court's findings under subsection (N). *In re T.T.*, 228 S.W.3d 312, 321 n. 8 (Tex. App.-Houston [14th Dist.] 2007, pet. denied).

## C. Sole Managing Conservator

Having affirmed the termination of appellant's parental rights, we consider his sixth issue, which asks whether the appointment of DFPS as sole managing conservator should be reversed. However, because appellant asks us to consider this issue only if we conclude that the trial court erred in terminating his parental rights, we need not address it.

## D. Constitutionality of Family Code Section 263.405(i)

In his first issue, appellant urges us to consider "whether § 263.405 is unconstitutional to the extent it requires appellant to identify appellate points prior to the appeal being perfected and before the trial court must file findings of fact and conclusions of law." Specifically, he contends that section 263.405(i) places an arbitrary and unreasonable barrier to appellate court consideration and, in doing so, results in an unconstitutional deprivation of a parent's due process rights, in violation of the Texas and United States Constitutions. *See* U.S. CONST. amend. XIV § 1; TEX. CONST. art. I, § 19.

### 1. Facially Unconstitutional

In addressing appellant's constitutional challenges to section 263.405, we begin with the premise that, when possible, we must interpret a statute in a

manner that renders it constitutional. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 873 (Tex.2000); *Quick,* 7 S.W.3d at 115. We note that "[a] facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992) (citing *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Thus, a party raising a facial challenge to the constitutionality of a statute must demonstrate that the statute always operates unconstitutionally. *See Neeley v. West Orange–Cove Consol. Indep. Sch. Dist.,* 176 S.W.3d 746, 814 n. 94 (Tex.2005); *Wilson v. Andrews,* 10 S.W.3d 663, 670 (Tex. 1999). As noted by the United States Supreme Court in *Salerno,* that a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In reviewing a facial challenge to a statute's constitutionality, we consider the statute as written, rather than as it operates in practice. *See FM Props. Operating Co.,* 22 S.W.3d at 873.

■ Appellant asserts that section 263.405(i) is facially unconstitutional to the extent that it requires a party to address in its statement of points matters not found by the trial court until after the deadline for filing the statement has expired. Turning to the language of the statute at issue, it provides in relevant part:

(b) Not later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on which the party intends to appeal. The statement may be combined with a motion for a new trial.

. . . .

(i) The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial. TEX. FAM.CODE ANN. § 263.405 (Vernon Supp.2006). Pursuant to Texas Rule of Civil Procedure 296, a party may file a request for findings of fact and conclusions of law within twenty days from the date a judgment is signed. *See* TEX.R. CIV. P. 296. Thus, juxtaposing section 263.405 with Rule 296, it is possible that a court might issue findings and conclusions after the due date for the statement of points has expired, as was the case here.

However, as discussed above, just because a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *See Salerno,* 481 U.S. at 745, 107 S.Ct. 2095. Instead, a party seeking to invalidate a statute must establish that every application of the statute violates the constitution. *See Nootsie, Ltd. v. Williamson Co. Appraisal Dist.,* 925 S.W.2d 659, 663 (Tex.1996). We note that a party who appeals a termination where the only alleged trial court error occurred prior to the due date for filing a statement of points would not be required to address in its statement matters found by the trial court after expiration of the due date. Moreover, it is conceivable that where a party promptly requests findings of fact and conclusions of law, a trial court could file its findings and conclusions prior to expiration of the due date for the state-

ment of points. Further, the Texas Supreme Court recently held that, under Texas Rule of Civil Procedure 5, a trial court may grant a party's motion to extend time for filing a statement of points for appeal under section 263.405. *See In re M.N.*, 262 S.W.3d 799, 804 (Tex.2008). Thus, a trial court may grant a party's motion to enlarge time for filing a statement of points where the party shows good cause for its failure to timely file it. TEX.R. CIV. P. 5.

Appellant's suggestion that section 263.405 is unconstitutional to the extent it requires a statement of points to include matters not found by the trial court until after expiration of the fifteen-day deadline is insufficient to demonstrate that the statute always operates unconstitutionally. Consequently, we reject appellant's argument that section 263.405(i) is facially unconstitutional.

### 2. Unconstitutional "As Applied"

▪▪▪ In the alternative, appellant asks us to find that section 263.405, as applied to him, is unconstitutional. An "as applied" challenge only requires the challenger to demonstrate that the statute operates unconstitutionally when applied to the challenger's particular circumstances. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n. 16 (Tex. 1995); *In re N.C.M.*, 271 S.W.3d 327, 328–29 (Tex.App.-San Antonio 2008, no pet. h.); *In re B.S.W.*, 87 S.W.3d 766, 771 (Tex. App.-Texarkana 2002, pet. denied).

Here, the trial court signed the termination decree on February 6, 2007. On February 20, 2007—fourteen days later—appellant's appellate counsel filed a combined statement of appellate points and motion for new trial. In his statement,

appellant did not raise the issue of paternity as to S.N. or S.M.N. On February 21, 2007, appellate counsel filed a request for findings of fact and conclusions of law. On March 2, 2007, DFPS filed proposed findings of fact and conclusions of law. On March 13, 2007, following a hearing, the trial court signed an order denying appellant's motion for new trial and issuing its findings of fact and conclusions of law.

Among its findings and conclusions—which mirrored those proposed by DFPS save one—the court found that the father of S.N. and S.M.N. was unknown. Appellant contends that because the termination decree identified him as the father of S.N. and S.M.N. and the issue of paternity as to S.N. and S.M.N. was only raised for the first time in DFPS's proposed findings of fact and conclusions of law—and after the fifteen-day deadline for filing his statement of points had passed—"[t]here was no paternity question to raise in the Statement of Appellate Points." As such, he contends that section 263.405(i) is unconstitutional as applied to him because it required him to address an issue of which he was unaware before filing his statement.

In support of his position that the decree identified him as S.N. and S.M.N.'s father, appellant points to the heading of paragraph 8, entitled "Termination of Respondent Father DAVID ALLEN NEUENSCHWANDER, JR.'S Parental Rights," and argues that if he was not the children's father, there would have been no need to terminate his parental rights. He further asserts that he is not identified as "alleged father" in the termination decree, and that it is only in the findings of fact that the trial court specifically stated that he was not the father of S.N. and S.M.N.[4]

---

**4.** Appellant's contention that "[i]t was only in the Findings of Fact that the trial court specifically stated that appellant was *not* the older

two children's father" is inaccurate. Finding of Fact No. 10, to which we presume appellant refers, states, "The father of [S.M.N.] and

Thus, he concludes that because the trial court did not file its findings of fact until after the fifteen-day period for filing a statement of points had expired, he was prevented from raising the issue in his statement. *See* TEX. FAM.CODE ANN. 263.405(i). We disagree.

Contrary to appellant's assertion, sub-paragraph 1.3 of the decree provides, "Respondent *Alleged* Father DAVID ALLEN NEUENSCHWANDER, JR .... duly and properly cited, appeared in court" (emphasis added). Further, although appellant is correct that paragraph 8 of the decree refers to "Termination of Respondent Father DAVID ALLEN NEUENSCHWANDER, JR.'S Parental Rights," paragraph 6 clearly provides that appellant's paternity is established as to D.A.N. only and makes no mention of his paternity with regard to S.N. and S.M.N.[5] Moreover, paragraphs 9 and 10 are entitled "Termination of the UNKNOWN FATHER of [S.N.]'S Parental Rights" and "Termination of the UNKNOWN FATHER of [S.M.N.]'S Parental Rights." Thus, appellant can hardly be heard to complain on appeal that he was unaware that the paternity of S.N. and S.M.N. was in question until the court filed its findings

of fact and conclusions of law. To the contrary, the decree made clear that only his paternity as to D.A.N. was established. As such, section 263.405(i) did not require him to address an issue in his statement of points of which he was unaware prior to filing it. We therefore conclude that section 263.405(i) is not unconstitutional as applied to him.[6] We overrule appellant's first issue.

### E. Paternity Findings

▮ In his second issue, appellant contends that the evidence was legally and factually insufficient to support the trial court's finding regarding his paternity as to S.N. and S.M.N. Specifically, he contends that there is no evidence to support the court's Findings of Fact 3, 4, 7, 8, 9, 10, and 21.

On March 13, 2007, the court issued the following relevant findings of fact:

3. Appellant did not sign an acknowledgment of paternity with the intent to establish his paternity for the children, [S.M.N.] and [S.N.].

4. Appellant did not register with the paternity registry of the bureau of

---

[S.N.] is unknown." This is not the same as stating that appellant is not the father of S.N. and S.M.N. In fact, Finding No. 10 arguably goes no further regarding appellant's paternity as to S.N. and S.M.N. than the decree, which established his paternity as to D.A.N. only and provided for termination of the unknown fathers' rights to S.N. and S.M.N.

5. Paragraph 6 of the decree provides, in relevant part:

Establishment of Paternity: **DAVID ALLEN NEUENSCHWANDER, JR.**
**IT IS ORDERED AND DECREED** that **DAVID ALLEN NEUENSCHWANDER, JR.** is, and he is hereby declared to be, the father of the child **[D.A.N.]** .... "

6. We note that one other court of appeals has reached a similar conclusion, albeit on other

grounds. *See In re A.T.S.*, No. 12–07–00196–CV, 2008 WL 2930392, at *18–19 (Tex.App.-Tyler July 31, 2008, no pet. h.) (mem.op.). In that case, the appellants argued that section 263.405 was unconstitutional in its application because the fifteen-day deadline for filing a statement of points required them to address findings of fact and conclusions of law that had not yet been filed. *See id.* at *18. The court stated "[b]ecause interpreting Section 263.405(i) to mean that [the appellants] cannot complain of alleged errors involving findings of fact and conclusions of law filed or omitted after Section 263.405(b)'s deadline leads to an absurd result, we conclude that Section 263.405(i) does not apply to alleged errors occurring after the fifteen day deadline. Therefore, Section 263.405(i) is not unconstitutional on this basis." *Id.* at *19.

vital statistics as a father of either [S.M.N.] or [S.N.].

7. Appellant did not submit to DNA testing to establish himself as the father of either the child, [S.M.N.] or [S.N.].

8. No father has filed with the paternity registry of the bureau of vital statistics as the father of either [S.M.N.] or [S.N.].

9. No man commenced a proceeding to adjudicate his paternity to the children [S.M.N.] or [S.N.] at any time before judgment was rendered in this case.

10. The father of [S.M.N.] and [S.N.] is unknown.

21. There is clear and convincing evidence that the Department of Family and Protective Services exercise[ ] due diligence to determine the location and identify [sic] of the father(s) of [S.M.N.] and [S.N.].

DFPS asserts that appellant failed to preserve his complaint regarding the court's decision not to declare him the father of S.N. and S.M.N. In support of its argument, DFPS emphasizes that the termination decree declared appellant only to be the father of D.A.N. and also terminated the parental rights of the unknown fathers of S.N. and S.M.N. DFPS contends that because appellant made no attempt to complain about those portions of the court's judgment, either in a motion to modify judgment or for new trial, or in his statement of appellate points, he failed to preserve his complaint for review.

Appellant disputes this contention, but he does not demonstrate how he complained about the trial court's failure to adjudicate him as the father of S.N. and S.M.N. In light of our disposition of his first issue, and because appellant failed to present the issue of his paternity as to S.N. and S.M.N. to the trial court in his statement of points as required under section 263.405(i), we are precluded from considering this issue on appeal. Issue two is overruled.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.