

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-22-00406-CV

**IN THE INTEREST OF C.R.P.**, D.P.G., and E.F.L., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-01880
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
               Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed: December 28, 2022

AFFIRMED

This appeal arises from the trial court's order terminating the parental rights of appellant A.G.G., the biological mother of C.R.P., D.P.G., and E.F.L. (collectively "the children").[1] In what we construe to be two issues, A.G.G. argues that the order terminating her parental rights should be reversed because (1) Section 263.202(b-1) of the Texas Family Code is unconstitutional on its face and as-applied, *see* TEX. FAM. CODE ANN. § 263.202(b-1); and (2) "procedural irregularities" in this case render its result untrustworthy. We affirm.

---

[1] We refer to the children and the children's family members by their initials in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

## I. BACKGROUND

In September 2020, the Texas Department of Family and Protective Services (hereinafter the "Department") initiated the underlying proceeding by filing a petition to terminate the parental rights of A.G.G. to the children.[2]  In October 2020, the trial court signed a temporary order that removed the children from A.G.G.'s custody and appointed the Department as their temporary managing conservator.  The temporary order contains the following admonishment:

> **THE COURT FINDS AND HEREBY NOTIFIES THE PARENTS THAT EACH OF THE ACTIONS REQUIRED OF THEM BELOW ARE NECESSARY TO OBTAIN THE RETURN OF THE CHILDREN, AND FAILURE TO FULLY COMPLY WITH THESE ORDERS MAY RESULT IN THE RESTRICTION OR TERMINATION OF PARENTAL RIGHTS.**

The temporary order then specifies that "the actions" include, among other things, a psychological or psychiatric evaluation, counseling, parenting classes, drug and alcohol assessment and testing, and compliance with a service plan.  Upon removal, the children began living with a family member.  In December 2020, the trial court appointed an attorney ad litem for A.G.G.

In March 2022, a bench trial on the Department's termination petition commenced.  The witnesses included, among others, Katy Meyer, a Department caseworker.  Meyer recounted that the Department began an investigation upon receiving referrals alleging that A.G.G. had engaged in physical abuse and neglectful supervision of the children.  In August 2020, A.G.G. was charged with "injury to a child, intent," according to Meyer.  After the children were removed, a family service plan was crafted, and A.G.G. reviewed it.  Based on Meyer's review of Department records, she believed that A.G.G. understood that if she failed to comply with the family service plan requirements, then her parental rights would be modified or terminated.  Meyer testified that the family service plan required A.G.G. to participate in parenting and domestic violence classes,

---

[2] The Department also sought to terminate the parental rights of the children's fathers.  The fathers are not parties to this appeal.

attend individual counseling, keep in contact with the Department, provide a safe and stable home, maintain employment, and submit to random drug testing. By the time of trial, A.G.G., according to Meyer, was not in compliance with the family service plan, and she had not engaged in any services. Moreover, on February 18, 2022, A.G.G. tested positive for methamphetamine and amphetamine.

Ultimately, the trial court found by clear and convincing evidence that A.G.G.'s parental rights to the children should be terminated on the basis of Section 161.001(b)(1)(E), (O), and (P)[3] of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O), (P). It further found by clear and convincing evidence that termination of A.G.G.'s parental rights was in the children's best interest. The trial court signed a final judgment terminating the parental rights of A.G.G. She timely appealed from the termination order.

## II. DISCUSSION

### A. Constitutional Challenge

Section 263.202(b-1), which A.G.G. contends is unconstitutional, is part of a statutory framework that governs the development and administration of service plans. In *Interest of G.L.*, the Thirteenth Court of Appeals aptly describes the statutory framework. No. 13-21-00410-CV, 2022 WL 709003, at *3 (Tex. App.—Corpus Christi-Edinburg Mar. 10, 2022, no pet.) (mem. op.). Upon the Department's appointment as temporary managing conservator of a child, the Department is required to develop a service plan that effectively serves as a road map for parents to avoid termination. *Id*. (citing TEX. FAM. CODE ANN. §§ 263.101, 263.102(a)). The paramount

---

[3] Generally, these provisions allow a trial court to terminate the parent-child relationship if the court finds by clear and convincing evidence that, among other things, the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, TEX. FAM. CODE ANN. § 161.001(b)(1)(D), failed to comply with specific provisions of a court order, *id*. § 161.001(b)(1)(O), or used a controlled substance in a manner that endangered the health or safety of the child. *Id*. § 161.001(b)(1)(P).

goal of a service plan is to ensure that a parent can provide their child with a safe environment. *See* TEX. FAM. CODE ANN. § 263.102(b). The trial court is generally required to conduct a status hearing where it reviews the plan "for reasonableness, accuracy, and compliance with requirements of court orders." *Id*. §§ 263.201(a), 263.202(b). The trial court must make specific findings, including whether the "parents have reviewed and understand the plan." *Id*. § 263.202(b)(2). "After reviewing the service plan and making any necessary modifications, the court shall incorporate the service plan into the orders of the court and may render additional appropriate orders to implement or require compliance with the plan." *Id*. § 263.202(b–1). Finally, the Department is required to designate an employee who is responsible for facilitating a parent's compliance with the plan. *Id*. § 263.005.

In A.G.G.'s first issue, she contends that Section 263.202(b-1) of the Texas Family Code is unconstitutional on its face and as-applied. *See* TEX. FAM. CODE ANN. § 263.202(b-1). A.G.G. argues that this statutory provision is unconstitutional in two ways. First, she contends that section 262.202 allows the trial court to abdicate its authority to create an order, in that the trial court incorporates a family service plan crafted by the Department. Second, A.G.G. asserts that the Family Code does not require the Department to reappear before the trial court if the Department amends the family service plan.

### 1. *Standard of Review*

For a statute to facially violate a constitutional provision, the statute must by its terms always and in every instance operate unconstitutionally. *Barshop v. Medina Cnty. Underground Water Conserv. Dist.*, 925 S.W.2d 618, 623 (Tex. 1996). It is not enough for the challenger to show that a statute operates unconstitutionally under some or even most circumstances. *See In re S.N.*, 287 S.W.3d 183, 194 (Tex. App.—Houston [14th Dist.] 2009, no pet.). To clear the facially unconstitutional hurdle, the statute must be unconstitutional in every application. *See id*. In

analyzing a facial challenge to a statute's constitutionality, we consider the statute as written, rather than as it operates in practice. *Id*. A court will not hold a statute facially invalid unless the statute could not be constitutional under any circumstances. *See Appraisal Rev. Bd. of Galveston Cnty., Tex. v. Tex-Air Helicopters, Inc.*, 970 S.W.2d 530, 534 (Tex. 1998).

The standard for an as-applied constitutional challenge differs markedly from the standard applied to a facial constitutional challenge. *Hous. Firefighters' Relief & Ret. Fund v. City of Houston*, 579 S.W.3d 792, 806 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). One making an as-applied constitutional challenge concedes that a statute is generally constitutional but contends that the statute is unconstitutional when applied to a particular person or set of facts. *See City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 240 (Tex. 2001) (per curiam).

### 2. *Applicable Law*

"The separation of the powers of government into three distinct, rival branches — legislative, executive, and judicial — is the absolutely central guarantee of a just Government." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 569 (Tex. 2013) (citation omitted). Although the constitutional provision on separation of powers "appears on its face to be rigid and absolute . . . such a construction would be impossible to implement in all cases because not every governmental power fits logically and clearly into any particular 'department.'" *Tex. Comm'n on Env't Quality v. Abbott*, 311 S.W.3d 663, 671 (Tex. App.—Austin 2010, pet. denied) (citation omitted). Thus, Texas courts have never held that the three branches of government operate with absolute independence, and have instead "long held that some degree of interdependence and reciprocity is subsumed within the separation of powers principle." *Id*. at 672. Accordingly, the separation of powers doctrine "enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Id*. (citation omitted). Where one branch of government assumes power more properly attached to another branch or unduly interferes with the powers of another,

any resulting order is void. *State v. Ferguson*, 125 S.W.2d 272, 274, 76 (Tex. 1939) (orig. proceeding) (noting availability of mandamus relief from a void order where one branch of government usurps the power of another); *In re D.W.*, 249 S.W.3d 625, 635 (Tex. App.—Fort Worth 2008, pet. denied).

The power of the judiciary is "divided among . . . various named courts by means of express grants of 'jurisdiction' contained in the constitution and statutes." *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). "In addition to the express grants of judicial power to each court, there are other powers which courts may exercise though not expressly authorized or described by constitution or statute." *Id*.

The executive branch in this case is the Department. It is a state agency, administered by the Health and Human Services Commission, that is legislatively designated to, inter alia, provide support and services to children through state and federal funding. *See* TEX. HUM. RES. CODE ANN. § 40.002; *Tex. Dep't of Fam. & Protective Servs. v. Parra*, 503 S.W.3d 646, 651 n.5 (Tex. App.—El Paso 2016, pet. denied) ("The Health and Human Services Commission oversees the Texas Health and Human Services system, which is composed of five state agencies, including [the Department].");  *Tex. Health & Hum. Servs. Comm'n v. Wolfe*, No. 03-08-00413-CV, 2010 WL 2789777, at *1 (Tex. App.—Austin July 14, 2010, pet. denied) (mem. op.) ("The Texas legislature reorganized several state social services agencies in 2003 and 2004. It created an umbrella agency, the Health and Human Services Commission[,] and divided it into four departments: the Department of Assistive and Rehabilitative Services[,] the Department of State Health Services, the Department of Aging and Disability Services, and the Department of Family and Protective Services.").

### 3. *Analysis*

Before addressing the merits of A.G.G.'s first issue, we note that she has failed to adequately brief an as-applied constitutional challenge to section 263.202(b-1). Although A.G.G. references an as-applied constitutional challenge, she fails to explain how section 263.202(b-1) is generally constitutional but unconstitutional when applied to her or a particular set of facts. *See City of Corpus Christi*, 51 S.W.3d at 240; *see also* TEX. R. APP. P. 38.1(i) (providing that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Accordingly, we conclude that A.G.G. has waived an as-applied constitutional challenge to section 262.202(b-1).

Turning to A.G.G.'s facial constitutional challenge, we conclude that her first argument fails. A.G.G. first argues that section 262.202 allows the trial court to abdicate its authority to create an order in that the trial court incorporates a family service plan crafted by the Department. However, this argument ignores the plain text of the first part of the statute by reading the second part of it in isolation. *See Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 59 (Tex. 2015) (providing statutory language cannot be determined in isolation and must be drawn from context in which used). Section 263.202(b-1) provides: "*After reviewing the service plan and making any necessary modifications*, the court shall incorporate the service plan into the orders of the court and may render additional appropriate orders to implement or require compliance with the plan." *See* TEX. FAM. CODE ANN. § 263.202(b-1) (emphasis added). The opening phrase expressly provides the trial court with the authority to review the service plan and make changes before incorporating it into its order. And as we have previously noted, "[t]he term 'review' is not defined by Chapter 263[,]" but when analyzing the plain and ordinary meaning of the term, we have observed that "[t]he inclusion of 'review' within the text of section 263.201 allows the court to inspect, consider, or reexamine the Department's service plans." *In re Tex. Dep't of Fam. &*

*Protective Servs.*, No. 04-22-00096-CV, 2022 WL 2135572, *6 (Tex. App.—San Antonio Jun. 15, 2022, orig. proceeding) (mem. op.). Our observation regarding the term "review" equally applies to section 263.202(b-1) of the Family Code. Moreover, under section 262.202(b-1) the trial court may "make[] any necessary modifications" to the family service plan. Accordingly, section 263.202(b-1) of the Family Code does not allow the Department to assume power more properly attached to the courts nor does it allow the Department to unduly interfere with the powers of the courts. *See Ferguson*, 125 S.W.2d at 276; *In re D.W.*, 249 S.W.3d at 635.

A.G.G.'s second argument — that the Family Code does not require the Department to reappear before the trial court if it amends the family service plan — fails because it is inadequately briefed. A.G.G. fails to reference a single legal authority in support of her second argument. *See* TEX. R. APP. P. 38.1(i). A.G.G.'s first issue is overruled.

## B.    Procedural Irregularities

In what we construe to be A.G.G.'s second issue, she argues:

> Indeed, combining — [1] the court's failure to appoint an attorney to represent Appellant (who appeared in opposition to termination) until after the Status Hearing and Pretrial Conference, [2] the substitution of Appellant's trial counsel just two months before trial and [3] the lack of any family services having been ordered for Appellant — renders the termination of Appellant's parental rights inherently judicially untrustworthy.

(brackets in original).[4] A.G.G. references neither a single legal authority nor a single record reference in support of what we construe to be her second issue. *See* TEX. R. APP. P. 38.1(i). Accordingly, we conclude that A.G.G.'s second issue is waived.

---

[4] The record does not support A.G.G.'s assertion that there is a "lack of any family services having been ordered for Appellant." The October 2020 temporary order directed A.G.G. to engage in, among other things, a psychological or psychiatric evaluation, counseling, parenting classes, and drug and alcohol assessment and testing.

## III. CONCLUSION

We affirm the trial court's parental termination order.


Rebeca C. Martinez, Chief Justice