02-12-075-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00075-CV

 

 


 
 
 In
 the Interest of D.R.J. and T.F.J., Children
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 323rd District
 Court
  
 of
 Tarrant County (323-90797J-09)
  
 February
 7, 2013
  
 Opinion
 by Justice Meier
  
 Concurrence
 by Justice Gardner
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s order.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Bill Meier

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00075-CV

 

 


 
 
 In the Interest of D.R.J. and T.F.J., Children
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

OPINION

----------

          In
a single issue, Appellant J.J. appeals the trial court’s order terminating her
parental rights to her children, D.R.J. and T.F.J.  We will affirm.

          CPS
received a referral on June 1, 2009, involving concerns of sexual abuse of
J.J., her sister M.J., and her twin cousins L.J.1 and L.J.2 by J.J.’s and
M.J.’s brother K.M.  At the time of the referral, all were members of the same household
with C.J.—J.J.’s, M.J.’s, and K.M.’s mother.  This was the sixth referral
involving C.J.’s home since April 2007.  CPS had received a referral then
involving neglectful supervision of J.J. by C.J. because J.J. was fourteen
years old and pregnant.  CPS received a second referral in January 2008 involving
sexual abuse of J.J., M.J., L.J.1, and L.J.2 by K.M.  CPS received a third
referral in June 2008 involving neglectful supervision of J.J. by C.J. because
J.J. was pregnant with her second child.  CPS received a fourth referral in
August 2008 involving sexual abuse of L.J.1 by K.M.  And in January 2009, CPS
received a fifth referral involving sexual abuse of L.J.1 and L.J.2.  Each of
the first five referrals were either closed at intake, closed administratively,
or ruled out.

          CPS
investigator Beth Hobbs met with J.J. on two occasions to discuss the latest
referral.  At the first meeting, J.J. was in juvenile detention for evading
arrest after an altercation with C.J.  C.J. had whipped J.J. with a two- to
three-foot board and a weapon, and J.J. had grabbed a knife and threatened C.J.
before jumping out of a two-story window onto C.J.’s car.  Hobbs concluded the
interview quickly because J.J. was uncommunicative.  At the second meeting,
J.J. expressed that she had no concerns about her children, including having
them in her mother’s care, and she was unwilling to speak about whether K.M.
was the father of her two children.  Hobbs also spoke with C.J., who was
unwilling to work with CPS.  Concerned about (1) the ongoing sexual
relationship between J.J. and K.M., which C.J. appeared to be aware of, and (2) 
D.R.J. and T.F.J. being at risk for sexual abuse by K.M. like J.J., M.J., L.J.1,
and L.J.2, CPS removed D.R.J., and T.F.J. (and J.J., M.J., L.J.1, and L.J.2) from
C.J.’s household.  All of the children were placed into foster care.

          J.J.
moved between foster homes from June 2009 to September 2010.  At one point, D.R.J.
and T.F.J. lived with J.J. at a foster home, and DFPS felt that J.J. had moved
closer towards complete reunification with her children.  However, J.J.’s
behavior, including an incident in which she threw water from a microwave that
hit T.F.J., concerned the foster parent, and J.J. was ultimately removed from
the foster home and admitted to a psychiatric hospital.  After being released
from the hospital, J.J. demanded to be returned to her mother’s care.  Concerned
that J.J. returning to C.J.’s household would “set [J.J.] back tremendously,”
DFPS opposed her request, but she was ultimately permitted to live with C.J.

          J.J.
successfully performed only some of the services that the trial court ordered her
to complete to obtain the return of D.R.J. and T.F.J.  At some point, DFPS’s
plan for J.J. regarding D.R.J., and T.F.J. changed from reunification to
termination.

          J.J.
testified at trial that K.M. had sexually abused her, M.J., L.J.1, and L.J.2;
that K.M. began sexually abusing her when she was twelve years old; that K.M.
continued to sexually abuse her until she was placed into foster care; and that
K.M. is the father of her two children.  J.J. explained that she moved back to
C.J.’s household despite realizing that she “wouldn’t be able to get [her]
kids” back, and she acknowledged squandering numerous opportunities for
counseling and family therapy. The jury found by clear and convincing evidence
that termination of the parent-child relationship between J.J. and D.R.J. and
T.F.J. was proper under family code section 161.001(1)(O) and that termination
was in the children’s best interests.

In
her only issue, J.J. challenges the legal and factual sufficiency of the
evidence to support the jury’s findings that D.R.J. and T.F.J. were removed
from J.J.’s care due to abuse or neglect by her against each of the children.

          Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. § 161.001 (West Supp. 2012), § 161.206(a) (West 2008).  Evidence
is clear and convincing if it “will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.”  Id. § 101.007 (West 2008).

In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the challenged ground for termination was
proven.  In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review
all the evidence in the light most favorable to the finding and judgment.  Id. 
We consider evidence favorable to termination if a reasonable factfinder could,
and we disregard contrary evidence unless a reasonable factfinder could not.  Id.

In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the verdict with our
own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine
whether, on the entire record, a factfinder could reasonably form a firm
conviction or belief that the parent violated section 161.001(1) and that
termination of the parent-child relationship would be in the best interest of
the child.  Tex. Fam. Code Ann. § 161.001; In re C.H., 89
S.W.3d 17, 28 (Tex. 2002).  If, in light of the entire record, the disputed
evidence that a reasonable factfinder could not have credited in favor of the
finding is so significant that a factfinder could not reasonably have formed a
firm belief or conviction in the truth of its finding, then the evidence is
factually insufficient.  H.R.M., 209 S.W.3d at 108.

Termination
of the parent-child relationship is warranted under family code section
161.001(1)(O) if the parent has

failed to comply with the provisions of a court order
that specifically established the actions necessary for the parent to obtain
the return of the child who has been in the permanent or temporary managing
conservatorship of the Department of Family and Protective Services for not
less than nine months as a result of the child’s removal from the parent
under Chapter 262 for the abuse or neglect of the child.

Tex.
Fam. Code Ann. § 161.001(1)(O) (emphasis added).

          As
alluded to above, J.J. does not challenge the sufficiency of the evidence to
show that she failed to comply with the provisions of the order that
established the actions necessary for her to obtain the return of the children
or that the children had been in the conservatorship of DFPS for at least nine
months.  Instead, she argues that while there is evidence that she, M.J.,
L.J.1, and L.J.2 were sexually abused by K.M., there is no evidence or
insufficient evidence that D.R.J. and T.F.J. were removed from her care because
(1) they were abused or neglected (2) by her.  J.J.’s
arguments are unpersuasive.

          Applying
well-established rules of statutory construction, subsection (O) does not
require that the parent who failed to comply with a court order be the same person
whose abuse or neglect of the child warranted the child’s removal.  See In re
S.N., 287 S.W.3d 183, 188 (Tex. App.—Houston [14th Dist.] 2009, no pet.)
(“Had the legislature intended such a requirement, it could have easily
provided that conservatorship be ‘as a result of the child’s removal from the
parent under Chapter 262 for the abuse or neglect of the child by the parent.’”);
In re M.N., No. 11-10-00129-CV, 2011 WL 917837, at *3 (Tex.
App.—Eastland Mar. 17, 2011, no pet.) (mem. op.) (reasoning similarly).  Thus,
notwithstanding our reasoning below attributing abuse and neglect of D.R.J. and
T.F.J. to J.J., DFPS did not have to prove that the abuse or neglect of D.R.J.
and T.F.J. was caused by J.J.

          As
for the “abuse or neglect” prong of subsection (O), several appellate
courts have observed that “abuse or neglect” is not defined in the statute or
by the case law and must be determined on a case-by-case basis.  See In re
A.A.A., 265 S.W.3d 507, 515 (Tex. App.—Houston [1st Dist.] 2008, pet.
denied); see also In re J.T.G., No. 14-10-00972-CV, 2012 WL 171012,
at *14 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, pet. denied) (mem.
op.).  We agree with that assessment.

          Here,
J.J. testified that K.M., her own brother, began sexually abusing her at age twelve
and continued to do so until she—and her two children fathered by K.M.—were
removed from C.J.’s household.  K.M., whom J.J. described at trial as a
“predator,” also sexually abused M.J., his other sister, and L.J.1 and L.J.2,
his cousins.  Thus, K.M., who had at one point been sent to juvenile detention
for sexual assault, had sexually abused almost every child in C.J.’s residence.
 When Hobbs questioned J.J. after the sixth referral, J.J. expressed no concern
about leaving her children in C.J.’s household.  Further, it appeared to Hobbs
that C.J. was aware of K.M.’s incestuous sexual abuse, but there is no evidence
that she took steps to confront the situation.  The conservatorship worker
assigned to the case testified that there are “several” options available to a
thirteen year old who has a child and wants to move the child out of the house.

          The
evidence of J.J.’s lack of concern about leaving D.R.J. and T.F.J. in the same
environment where K.M. was sexually abusing other family members was sufficient
to show neglectful supervision of D.R.J. and T.F.J. by J.J.  Moreover, the
undisputed evidence of ongoing sexual abuse of multiple family members
occurring in the same household where D.R.J. and T.F.J. lived was sufficient to
demonstrate emotional abuse of D.R.J. and T.F.J. while in J.J.’s care.  Accordingly,
we hold that the evidence is legally and factually sufficient to support the jury’s
family code section 161.001(1)(O) findings.  See Tex. Fam. Code Ann. § 161.001(1)(O). 
We overrule J.J.’s only issue and affirm the trial court’s order terminating
J.J.’s parental rights to D.R.J. and T.F.J.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
GARDNER, MCCOY, and MEIER, JJ.

 

GARDNER,
J., filed a concurring opinion.

 

DELIVERED: 
February 7, 2013

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00075-CV

 

 


 
 
 In the Interest of D.R.J. and T.F.J., Children
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

CONCURRING
OPINION

----------

I
cannot agree that there was evidence of “abuse or neglect” by J.J. of her two
children that resulted in their removal by the Department.  From my review of
the record, removal was due to neglect of J.J.’s children by C.J., J.J.’s
mother, not by J.J.  Because I agree with the majority that, for termination of
parental rights under section 161.001(1)(O), the parent whose parental rights
are sought to be terminated need not be the same person whose “abuse and
neglect” resulted in the child’s removal and because I believe that the
evidence is clear and convincing that the children were removed because of
neglectful supervision by C.J., I concur in the affirmance of the trial court’s
judgment.

The
“abuse or neglect” resulting in removal of children by the Department need not
have been committed by the parent whose rights are sought to be terminated
under subsection (O).  See In re S.N., 287 S.W.3d 183, 185–86 (Tex.
App.—Houston [14th Dist.] 2009, no pet.) (op. on reh’g) (affirming termination
of father’s rights under subsection (O) although children had been removed from
mother, not father, and concluding that “subsection (O) does not require that
the parent who failed to comply with a court order be the same parent whose
abuse or neglect . . . warranted the child’s removal”); In re C.D.B.,
218 S.W.3d 308, 309–12 (Tex. App.—Dallas 2007, no pet.) (upholding termination
of mother’s rights for failure to comply with order establishing actions
necessary for return of children who had been removed for father’s abuse of
children during mother’s absence); In re S.M., No. 04-04-00194-CV, 2005
WL 418540, at *1–4 (Tex. App.—San Antonio Feb. 23, 2005, no pet.) (mem. op.)
(affirming termination of mother’s rights for failure to comply with court
order under subsection (O) for return of children removed as a result of her
boyfriend’s abuse of one of the children); see also In re C.M.C., No.
14-12-00186-CV, 2012 WL 3871359, at *1, 4 (Tex. App.—Houston [14th Dist.] Aug.
30, 2012, no pet.) (mem. op) (op. on reh’g) (affirming termination of father’s
rights for failure to comply with court order under subsection (O) for return
of children whose removal was the result of abuse or neglect by mother); In
re M.N., No. 11-10-00129-CV, 2011 WL 917837, at *3 (Tex. App.—Eastland Mar.
17, 2011, no pet.) (mem. op.) (holding removal of children for neglectful
supervision of child by mother sufficed for termination of father’s parental
rights under subsection (O) for failure to comply with service plan as required
to obtain return of children).

Here,
the evidence—ranging from the history of prior referrals and from the
investigation at the time of the removal—was undisputed that physical abuse and
neglectful supervision of J.J., her sister, and her two children had been
ongoing by C.J. for several years; C.J. had ignored, if not allowed, the sexual
abuse of all of the children in the household by K.M.  As the majority notes,
it appeared that C.J. knew of K.M’s ongoing incestuous behavior, but C.J. took
no steps to confront it, was unwilling to discuss it, and did not cooperate
with the Department.  This evidence was sufficient to constitute clear and
convincing evidence in this case for removal of the children for neglectful
supervision by C.J. under subsection (O) without faulting J.J., who was herself
a victim and still only sixteen at the time she, her sister, her cousins, and
her children were finally removed from C.J.’s home.  The evidence of removal
for neglectful supervision by C.J. also harmonizes the jury’s affirmative finding
in answer to the termination questions based on (O) with the jury’s refusal to
find that J.J. either knowingly placed or knowingly allowed her children to
remain in conditions or surroundings which endangered their emotional or
physical well-being under family code section 161.001(1)(D) or that J.J.
engaged in conduct or knowingly placed the children with persons who engaged in
conduct which endangered her children’s physical or emotional well-being under
section 161.001(1)(E).  See Tex. Fam. Code Ann. § 161.001(D), (E), (O)
(West Supp. 2012).

Beth
Hobbs was the CPS investigator assigned to the June 1, 2009 referral relating
to C.J. as a result of concerns about K.M.’s sexual abuse of J.J., age sixteen;
M.J., age thirteen; and J.J.’s twin cousins, age twelve, all of whom were
living in C.J.’s household.  Prior referrals began in April 2007 with an
allegation of neglectful supervision by C.J. because J.J. was fourteen years
old and pregnant.  The January 30, 2008 referral involved allegations of
physical abuse by C.J. and K.M., who had recently moved back in the home, and
sexual abuse by K.M. of another cousin.  A June 23, 2008 referral alleged
neglectful supervision of J.J. by C.J. because J.J., then the mother of a
ten-month old child, was pregnant again.  Those cases were closed because no
child made an outcry of sexual abuse to the Department, but J.J. was admitted
to and received treatment from the adolescent psychiatric floor for suicidal
ideations.  Yet another referral was made in August 2008 alleging sexual abuse
of one of the cousins by K.M., who had been in the Detention Center but was then
back in the home.  That case was closed in part because the juvenile system was
working with the family.  Before this case, the most recent referral was for
alleged sexual abuse of the cousins by K.M., who admitted that he had “hunched”
one of the cousins, had penetrated her anus between twenty and thirty times,
and had performed oral sex on the other cousin.

The June
1, 2009 referral that Hobbs received for this case was for sexual abuse not
only of M.J. and the cousins but also of J.J.’s two children.  A report then came
in that J.J.’s children were fathered by her brother.  Hobbs attended J.J.’s
detention hearing; interviewed the four older children; and spoke with C.J.,
her boyfriend, and a family friend and godparent to one of J.J.’s children who was
a possible placement option for J.J. or M.J.  Hobbs presented a request to the
District Attorney’s office for removal of all of the children on June 5, 2009,
pursuant to section 262.104 of the family code, which allows for emergency
removal of children without a court order.  See Tex. Fam. Code Ann. §
262.104 (West 2008).

Respectfully,
I believe that the majority’s reference to a “lack of concern” by J.J. about
leaving her children in her mother’s care does not fairly characterize Hobbs’s
testimony.  Hobbs testified that she first tried to interview J.J. at the
Juvenile Detention Center on the date of the referral.  This was a child who
had been beaten with a board by her mother the night before while her brother
held her down and joined in the beating until she escaped by jumping from a
second-story window.  Hobbs said J.J. was “very quiet”; sat with her hands on
her face; only answered “a fight” as to why she was at the Detention Center;
and responded “yes,” “no,” or with no answer at all to other questions.  Hobbs
testified that J.J. “just really wasn’t communicative.”  When Hobbs expressed
concern for the children’s safety in light of allegations that her brother was
their father and that she had been the victim of ongoing sexual abuse, Hobbs
said, J.J. “was not willing to speak about that at that point.”

Tyra
Sasita, the conservatorship caseworker assigned over all of the cases connected
to J.J. and her family members, testified that when she first met with J.J.,
J.J. had the demeanor of an abused child.  She was withdrawn with little or no
eye contact.  Sasita confirmed that J.J. would not talk with anyone and was
“very, very shy” at first.  Sasita testified that her intent was to build
J.J.’s trust and to explain to her that none of it was her fault.  J.J.
eventually acknowledged not only that she had been abused but also that all of
the children in the home had been abused by K.M.

Sasita
explained that working with abused children gets more difficult as they get
older.  For a teenager, a pattern of behavior has set in, and “[t]hey don’t
really know that this chaotic environment that they’re living in is not . . .
what we would think of [as] normal.”  The issue here is why the Department
removed J.J.’s children based upon the information available to it at the time,
and there is no evidence that the Department considered any lack of expression
of concern by J.J. for her children in the sexually abusive environment of her
home as neglectful supervision by her but, rather, as a sexual abuse victim’s
initial unwillingness to talk openly about her experience and concerns, particularly
regarding incest.

Citing
Sasita’s testimony, the majority seems to imply that J.J. was neglectful
because she had options she should have exercised to protect her children from
the risk and environment in the household of sexual abuse.  But Sasita
emphatically testified to the contrary:

Q.  Okay.  How does a
13-year-old protect against sexual abuse?

 

A.  In terms of --
she’s a child -- I mean, that’s a child.  The child is not supposed to.  It’s a
parent’s job to protect.

 

Q.  All right.  I
agree with you.  So in terms of, would you think it’s very difficult for a
13-year-old to protect herself against sexual abuse?

 

A.  Yes, I would
agree.

 

Q.  Do you think it would
be difficult for a 14-year-old to protect herself against sexual abuse?

 

A.  Yes.

 

Q.  And a 15-year-old?

 

A.  Yes.

 

Q.  And a 16-year-old?

 

A.  Yes.

 

Q.  In the situation
where a 13-year-old might have a child, what avenues are available for her to
move her children outside of the home she’s in that you’re aware of?

 

A.  There are
several.  There are several different things that could have happened.  I’m
cautious to say, because I don’t believe it’s ever a child’s fault, so if you
choose not to take any avenue, there are things, there are places out there,
yes, but I’m not going to mandate that a child do that.  Maybe she didn’t know
to do that.

 

Q.  It’s a difficult
situation.

 

A.  Very.

 

Q.  This is a hard
case.

 

A.  It is.

Hobbs
also confirmed that although the Department had concerns that J.J.’s children
were at risk of sexual abuse, it was not the Department’s position that J.J.
should have left the home or that she was not protective of her children. 
Hobbs testified,

No, that was our -- no.  [J.J.] in my opinion is a victim
of sexual abuse.  Our concern was that [J.J.’s children] were at risk because
they were in the same situation that she was in. . . .  [O]ur concern was that
these children were at risk of sexual abuse just like [J.J.] had been sexually
abused, [M.J.] had been sexually abused, [the twin cousins], all by [K.M.] in
the home.

Based
upon the foregoing portions of the record as well as J.J.’s own testimony that
it was very hard for her to talk about the abuse that had happened in her home
because of her feelings of shame and guilt and her belief that it was all
somehow her fault, there is no basis in the record that removal of J.J.’s
children by the Department was for “abuse or neglect” by J.J.

On
appeal, J.J.’s contention is that there was no evidence that her children were
removed as the result of any actual abuse or neglect but solely due to
“risk” of abuse or neglect, which some courts have held to be insufficient for
termination of a parent’s rights under subsection (O).  She points to Hobbs’s
testimony, as quoted above, that her children were removed because they were at
risk of sexual abuse.  This court has previously held that evidence was
sufficient to establish removal for “abuse or neglect” based upon a CPS
investigator’s personal knowledge of facts that would lead a person of ordinary
prudence to believe that there is “an immediate danger to the physical health
or safety of the child” as required for removal without a court order under
family code section 262.104(a)(1), (2).  In re M.L.J., No. 02-07-00178-CV,
2008 WL 1932076, at *6 (Tex. App.—Fort Worth May 1, 2008, pet. denied) (mem.
op.); see Tex. Fam. Code Ann. § 262.104(a)(1), (2); see also S.N.,
287 S.W.3d at 190 & n.2 (holding family service plan received in evidence
without objection contained sufficient factual recitations to support removal
for “neglect” in that police arrested mother for abandonment when children were
left alone for over twelve hours in filthy house, and court’s temporary order
naming Department as managing conservator found danger to children’s health or
safety and “substantial risk of continuing danger if the children are returned
home”); In re A.A.A., 265 S.W.3d 507, 510, 515–16 (Tex.
App.―Houston [1st Dist.] 2008, pet. denied) (op. on reh’g) (finding child
was removed for abuse or neglect by mother, not because she left child in
shelter while she went to shoplift medicine from store but because she made no
effort to determine child’s location or condition after being released from
police custody, and trial court’s temporary order naming Department likewise
found a “continuing danger to the physical health or safety of the child if
returned to the parent”).

The
line of cases relied upon by J.J. holding that removal of children based on
mere risk of abuse or neglect is insufficient for termination based on
violation of subsection (O) are factually distinguishable, as each case
involved either remote prior conduct of a parent concerning different children
or a single incident regarding a sibling without evidence of an ongoing threat
of abuse or neglect to the child in question at the time of removal.  See In
re S.A.P., 169 S.W.3d 685, 696–97, 704–06 (Tex. App.―Waco 2005, no
pet.) (holding evidence did not establish abuse or neglect under (O) where
child was removed from mother three days after birth solely based on remote
prior history that parents had rights to other children terminated; caseworker
testified that child was not removed for abuse or neglect but only because of
prior history, and there was no evidence the prior conduct created any future
threat); see also In re E.C.R., No. 01-11-00791-CV, 2012 WL
897777, at *1, 4–6 (Tex. App.―Houston [1st Dist.] Mar. 15, 2012, no pet.)
(holding evidence legally insufficient for termination under (O) as to child
removed due to “risk” based on incident in which witness claimed mother dragged
a sibling down a street by her ponytail causing bruises and scrapes and evidence
child was behind on immunizations); Mann v. Dep’t of Family & Protective
Servs., No. 01-08-01004-CV, 2009 WL 2961396, at *7 (Tex. App.―Houston
[1st Dist.] Sept. 17, 2009, no pet.) (mem. op.) (holding evidence insufficient
under (O) where child was removed a few days after birth based solely on risk
of abuse because a sibling was in the care of the Department based on
allegations of physical abuse).

Here,
the evidence was undisputed that J.J., her two children, her sister, and her
twin cousins were all removed and placed in separate foster homes because of
longstanding and ongoing sexual abuse by K.M. of J.J., M.J., and other children
in the household and because of C.J.’s neglectful supervision of all of the
children.  Therefore, rather than holding as the majority does that the
children were removed because of J.J.’s neglectful supervision, I would overrule
J.J.’s sole issue because the evidence was clear and convincing that J.J.’s
children were removed from the parent under chapter 262 for neglectful
supervision by C.J.

 

 

ANNE GARDNER
JUSTICE

 

DELIVERED:  February 7, 2013