# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00610-CV

**A. L., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 12-15389, HONORABLE BENTON ASKEW, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court rendered an order terminating A.L.'s parental rights to her two children, B.L.[1] and J.T.  On appeal, A.L. challenges the legal sufficiency of the evidence supporting the trial court's finding that there were grounds for termination and the factual sufficiency of the evidence supporting the trial court's finding that termination of A.L.'s parental rights was in B.L.'s and J.T.'s best interest.  We will affirm the judgment.

## BACKGROUND

In early August 2012, A.L. was living with her two children, B.L., then two years old, and J.T., then three months old, at the Family Crisis Center in Bastrop.  Brenda Ramirez, the Family Based Safety Service worker, testified that the staff at the shelter intended to ask A.L. to leave the

---

[1] Because this child's true initials are the same as the parent's, we will refer to the child using the initials B.L.

shelter because of her "attitude," but Ramirez was able to convince the staff to give A.L. a second chance. At that time Ramirez set up protective parenting, individual counseling, and basic parenting services for A.L. The children were enrolled in daycare provided by the Department. On August 24, Ramirez received a call from the Center informing her that A.L. would be asked to leave the shelter that afternoon because she had been heard shouting at the children and cursing in front of other shelter residents. The Center staff stated that they would not allow A.L. to remain at the shelter over the weekend and planned to inform her of that fact at 4:00 in the afternoon when she finished her shift working at a Subway in Bastrop. Ramirez went to the Subway to inform A.L. that she needed to find somewhere else to stay. When Ramirez and A.L. attempted unsuccessfully to find a suitable place for A.L. to go, the Department removed B.L. and J.T. from A.L.'s custody and placed them in a foster home in Austin.

Ramirez testified that when she picked up the children to take them to the foster home, they were thin and dirty. Sylvia Hernandez, the foster parent, testified that when the children came to her home they were underweight and J.T. was wheezing. When she took J.T. to the emergency room she was told he was underweight. Hernandez recounted that B.L. was unusually inactive and withdrawn for a child her age and that neither she nor J.T. had a normal appetite.

At trial, A.L. was questioned about her living situation. Her testimony was confusing and inconsistent with regard to where she had been living at various times during the past year. She testified that she lived with a friend in Smithville from December 2012 through January 2013. But she also testified that she began living at the Center in Bastrop in August 2012 and remained there for six months. A.L. testified that she lived in various apartments on Main Street in Bastrop from

2

January 2013 through April 2013 and claimed to be a tenant on a lease for one of the apartments, although the lease, which was admitted into evidence, does not list her as a tenant. A.L. also claimed to have signed a lease for an apartment in Smithville but said she was unable to move in because she could not pay the first month's rent. Dallas Skeens, a conservatorship worker for the Department, testified that in several instances people offered to help A.L. and provide her with a place to stay, but that the assistance lasted only a week or so. Skeens testified that, in his view, A.L. had a "chronic history of homelessness."

The Department, through witness Skeens, presented evidence that A.L. had not completed her family services plan, although she did complete a protective parenting class. A.L. also admitted that she had failed to keep the Department apprised of several of her changes in address as required by the services plan. A.L. also failed to verify that she complied with a $50 per month child support obligation, and despite her testimony that she believed that $50 was automatically deducted from her paychecks from Subway, the only pay stub she produced to the Department did not reflect any such deduction. Although she claimed to be working at the Subway in WalMart for four months, she could not recall her start date. She also admitted that, because she had been in the company of a person caught shoplifting at WalMart, she was no longer allowed on the premises but asserted that she could be transferred to another Subway location.[2] Although she testified that she was also working at a Carl's Jr. restaurant, she did not provide any documents or evidence confirming that employment.

---

[2] Despite conclusive evidence to the contrary, A.L. remained adamant that she had not been arrested on that occasion.

3

A.L. testified that she has no relationship with her adult family members but maintained that she did not need any help with housing or medical issues and could "deal with it [herself.]" Skeens testified that although A.L.'s counselor told him that he did not see any problem with returning B.L. and J.T. to A.L. if she had a stable housing situation, Skeens opined that that recommendation was based either on incorrect information provided by A.L. to the counselor or was a recommendation the counselor felt comfortable making because he was confident that A.L. would not be able to demonstrate that she had stable housing. A.L. testified that she is currently on a list for a two-bedroom apartment but that it takes two to three years to get such an apartment. In the meantime, A.L. stated that she is sleeping on the couch at a friend's apartment. The friend did not testify at trial because, according to A.L., she was at home sick. A.L. stated that the friend's son was at the court that day, but he was not called to testify. A.L. expressed a strong desire to support and raise her children, but in Skeens's opinion, there was a very high risk that A.L. would continue to be unable to provide a safe environment for them.

Donna Tomlin, the CASA[3] caseworker for B.L. and J.T., testified that they are doing very well in foster care, have gained weight, and become more engaged and active. She testified that the foster mother was caring and the foster family consisted of a supportive family environment. Tomlin noted that B.L. continues to have a nervous habit of picking at her skin and scratching her scalp, causing thin patches in her hair. Tomlin also testified that in her opinion A.L. lacks the maturity or wisdom to take care of her children and that she is resistant to accepting help.

[3] Court Appointed Special Advocate.

4

At the conclusion of the bench trial, the trial court terminated A.L.'s parental rights to B.L. and J.T. pursuant to Texas Family Code subsections 161.001(1)(D), (E), (F), (I), and (O) and found that termination was in the children's best interest. On appeal, A.L. challenges the legal sufficiency of the evidence supporting the five stated grounds for terminating her parental rights and challenges the factual sufficiency of the evidence supporting the finding that termination of her parental rights is in the children's best interest.

## DISCUSSION

The termination of parental rights is a matter that implicates fundamental constitutional rights. *See In re S.N.*, 287 S.W.3d 183, 186 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A trial court may terminate the parent-child relationship if it finds by clear and convincing evidence that (1) a parent committed one or more of the statutory child-endangering acts or omissions in family code section 161.001(1), and (2) termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(1), (2). "Clear and convincing evidence" is defined as "the measure of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *see Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 612 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). On appeal, we apply a standard of review that reflects this burden of proof. *In re J.F.C.*, 96 S.W.3d 256, 264-66 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support a termination finding, we look at all the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction about the truth of the matter on which the Department bears the burden of proof. *In re J.L.*, 163 S.W.3d 79,

5

84-85 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266-66. We do not, however, disregard undisputed evidence that does not support the finding. *In re J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). We must consider the disputed evidence and determine whether a reasonable factfinder could have reasonably resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). The focus is on the best interest of the child, not the best interest of the parent. *See Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). However, parental rights may not be terminated merely because a child might be better off living elsewhere. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The factfinder may consider a number of factors in determining the best interest of the child, including: the desires of the child, the present and future physical and emotional needs of the child, the present and future emotional and physical danger to the child, the parental abilities of the person seeking custody, programs available to assist those persons in promoting the best interest of the child, plans for the child by those individuals, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The Department need not prove all nine

6

*Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the fact-finder from finding by clear and convincing evidence that termination is in a child's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *In re C.H.*, 89 S.W. 3d at 27. While no one factor is controlling, analysis of a single factor may be inadequate in a particular factual situation to support a finding that termination is in the best interest of the child. *See In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

In the present case, the trial court found clear and convincing evidence of five independent grounds for terminating A.L.'s parental rights. *See* Tex. Fam. Code § 161.001(1)(D), (E), (F), (I), (O). For the reasons that follow, we conclude that the judgment terminating A.L.'s parental rights can be affirmed based on the child-endangerment ground alone, *see id.* § 161.001(1)(E), obviating the need to analyze the legal sufficiency of the evidence to support the findings of the other four grounds for termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

The trial court determined that clear and convincing evidence established that A.L. "engaged in conduct or knowingly placed the child with persons who engaged in conduct [that] endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(1)(E). As used in the termination-of-parental-rights statute, endangerment means exposing a child to loss or injury, or jeopardizing a child's emotional or physical well-being. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The statute does not require that the endangering conduct be directed at the child or cause physical harm; rather, it is sufficient if the conduct endangers the child's emotional well-being. *Id.* However, the alleged endangerment must result directly from the parent's conduct and must be the result of a conscious course of conduct rather than

7

a single act or omission. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied) ("A voluntary, deliberate, and conscious 'course of conduct' by the parent, that endangers the child's physical and emotional well-being is required."). Absence of self control and propensity for violence may be considered as evidence of endangerment. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). As a general principle, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

As set forth above, there was extensive testimony addressing A.L.'s inability to provide a home for her and her children, the fact that she had moved several times in the past year, and the fact that she had been asked to leave the Family Crisis Center because of her behavior toward her children and the other residents of the Center. Further, there was testimony that J.T. was underweight and needed medical attention. A.L.'s testimony regarding her living arrangements and her employment demonstrated an inability on her part to provide a stable home for the children. By her own admission, A.L. was not able to earn enough money to provide a place for her and her children to live, and her behavior resulted in her being asked to leave a shelter. A.L.'s history of staying for brief periods of time with different friends and her future plans to continue to do so in the event the children were returned provided further indication of her inability to provide for her children's physical well-being. *See In re S.I.H.*, No. 02-11-00489-CV, 2012 WL 858643, at *5 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.).

8

On appeal, A.L. contends that the evidence supporting a finding that there was a ground for termination under section 161.001(1)(E) was legally insufficient because the Department failed to offer her services "adequate to [her] needs." A.L. essentially argues that because she has mental disabilities, the Department was required to make some unspecified efforts beyond offering her "the basic services," and having failed to do so, termination pursuant to section 161.001(1)(E) was not legally permitted. First, we note that there was no evidence in the record that A.L. suffers from any identified mental disability. A.L. herself testified that she was capable of dealing with her issues, and neither she nor her counsel presented any evidence that A.L had a mental deficiency or that she needed special services in order to accommodate any mental deficiencies. Moreover, A.L.'s argument that the Department failed to "make reasonable efforts to return the child to the parent" as required by Family Code section 161.003 misses the mark. *See* Tex. Fam. Code § 161.003(a)(4) (when terminating parent-child relationship because parent has certain mental deficiencies, Department must make reasonable efforts to return child to parent). Section 161.003 sets forth the requirements for a court to terminate a parent-child relationship based on an inability to care for the child due to mental or emotional illness or a mental deficiency. In the present case, however, the termination was ordered pursuant to section 161.001, not section 161.003, and the requirements for termination under 161.003 are therefore not implicated in this case. *See Karl v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-03-00655-CV, 2004 WL 1573162, at *5 n.3 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) (section 161.001(1)(E) contains no requirement that Department make reasonable efforts to return child to parent). We overrule A.L.'s first issue.

In her second issue, A.L. contends that the evidence was factually insufficient to support a finding that terminating her parental rights was in the children's best interest. Once the trial court finds parental conduct sufficient to warrant termination, it must then determine if termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(2). Factors to consider in deciding the best interest of the child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the parent seeking custody; (5) the programs available to assist the parent seeking custody; (6) the plans for the child by the parent or agency seeking custody; (7) the stability of the home or the proposed placement; (8) any acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). A fact-finder is not required to consider all of the listed factors, and the list is not exhaustive; the fact-finder is permitted to consider other factors when appropriate. *Id.* at 372. The analysis of one factor in a given case may be sufficient to support a finding that termination is in the child's best interest, but no single factor is controlling on its face. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

While both B.L. and J.T. are too young to express their desires, in such cases a court may consider the quality and extent of the child's relationship with the prospective placements. *See L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *10 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (courts consider quality and extent of young children's relationship with prospective placements); *In re U.P.*, 105 S.W.3d 222, 230 (Tex.

10

App.—Houston [1st Dist.] 2003, pet. denied) (considering evidence that child was well cared for by foster family, had bonded with them, and spent minimal time with parent in assessing toddler's desires). There was testimony presented that B.L. and J.T. are doing very well with their foster family. With respect to their present and future emotional needs and physical needs, there was evidence that A.L. has historically been unable to provide a stable living situation for herself and her children and has engaged in behavior that caused her to be asked to leave a shelter. There was also testimony that, while in A.L.'s care, the children were underweight and emotionally withdrawn. There was testimony that A.L. lacks the maturity and wisdom to care for her children yet believes that she does not need assistance from others. A.L.'s stated plans for the future for her children were somewhat confusing and arguably unrealistic. She testified that she planned to get an apartment of her own but also stated that the reason she did not have an apartment now was because she could not afford the deposit and that the wait for affordable housing was two years. A.L. has also not demonstrated an ability to maintain employment or earn enough money to pay even minimal child support for B.L. and J.T. Moreover, A.L. apparently engaged in conduct that resulted in her arrest and caused her to be unable to return to her job because her place of employment was located in the building in which she was arrested.

A reasonable trier of fact could have formed a firm belief or conviction that, if returned to A.L., B.L. and J.T. would continue to have an unstable living situation that would compromise their physical and emotional needs, and, therefore, that termination was in the children's best interest. We overrule A.L.'s second issue.

11

**CONCLUSION**

Having overruled A.L.'s two appellate issues, we affirm the trial court's judgment.


_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed:   February 13, 2014

12