**Affirmed and Memorandum Opinion filed February 2, 2023.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00654-CV

---

## IN THE INTEREST OF D.L.W., JR. AND E.W., CHILDREN

---

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-23638**

---

## M E M O R A N D U M   O P I N I O N

The trial court terminated a father's parental rights to his sons, D.L.W., Jr. ("David") and E.W. ("Eddie") on predicate grounds of constructive abandonment and failure to comply with a family service plan. The court also found that termination was in the children's best interest and appointed the Department of Family and Protective Services (the "Department") as the children's sole managing conservator. On appeal, Father challenges only the legal and factual sufficiency of the evidence to support the predicate grounds; he does not challenge the trial court's best interest finding. Because we conclude that legally and factually sufficient

evidence supports the trial court's finding that Father failed to comply with a family service plan, we affirm the judgment.

## Relevant Background

Because Father does not challenge the trial court's best interest finding, we summarize only the key facts and background relevant to the trial court's finding on the predicate ground of failure to comply with the family service plan.[1]

David was born on September 12, 2015; Eddie was born on October 20, 2016. The children resided with Father in Texas. In April 2018, the Office of the Attorney General filed a child support action, seeking child support from the children's mother. Mother and Father were separated at the time of the child support suit.

### A. The May 2018 Referral

On May 27, 2018, the Department received a referral alleging neglectful supervision, physical abuse, and physical neglect of the children. According to the referral, Father went to a neighbor's apartment with a handgun and threatened to kill the neighbor. The neighbor called the police after Father returned to his apartment. When police arrived, Father yelled at the officers and refused to come out. Father stood in front of a window holding up one of the children and told police that they could not shoot him when he was holding a child. Father stripped naked and "gyrated" his penis toward the officers through the window. He eventually emerged from the apartment, while holding one of the children in front of him as police

---

[1] Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in a child's best interest. *See In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam); *In re L.M.*, 572 S.W.3d 823, 832 (Tex. App.—Houston [14th Dist.] 2019, no pet.). A single finding of a predicate ground, coupled with the trial court's unchallenged best interest finding, is sufficient to support termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

pointed their guns at him. Officers arrested Father for aggravated assault with a deadly weapon.

The referral also alleged that Father's apartment, where the children lived, had no edible food, had trash on the counters, smelled of rotten food, and was infested with various insects. The children were left with Father's live-in girlfriend, S.L.

After receiving the referral, the Department assigned caseworker Karla Johnson to investigate. Johnson returned to the apartment and found the children with S.L. Johnson reported that the children appeared happy and healthy. Johnson spoke with S.L., whose version of events was consistent with the referral, although S.L. added that the incident began with an argument between Father and the neighbor.

Johnson interviewed the neighbor, who said that she went to Father's apartment to discuss why he had made her cousin, who had been living with Father, move out. After a brief argument, the neighbor left and returned to her apartment. Minutes later, Father burst into the neighbor's apartment, brandishing a gun. Father waved the gun in her face and threatened to kill her, as her children sat nearby. Father left when the neighbor said she was calling the police. The neighbor reported that she was afraid for the lives of her children and herself.

Johnson also spoke with Officer Andrew Graf, one of the responding police officers. His description of events was consistent with the neighbor's. According to Officer Graf, the standoff lasted about two hours, during which time the officers obtained a warrant so they could break down the door. Before officers executed the warrant, however, Father emerged from the apartment holding one of the children in front of him as a "shield." The officer reported the same poor living conditions in the apartment as the referral described. The officers confiscated a handgun, ammunition, and a BB gun from the apartment.

3

Johnson interviewed Father at the Harris County Jail. Father told Johnson that the children were born in California and that he moved with them to Texas after Mother, who was "on drugs," left them and never returned. Father did not agree with the descriptions of the incident provided by the others. Instead, Father said that the neighbor threatened him with bodily harm during the argument. He denied having a gun and said that he pointed a piece of plastic that looked like a gun to frighten the neighbor. He said he held up his children in front of police because he was worried that he might be shot because he was a Black male. Father stated the officers threatened to shoot him several times. According to Father, he did not intentionally drop his pants but rather they fell down because he was not wearing a belt. Father said the police were not being truthful about the incident and that they told him they would call the Department and tell them lies to take away his children.

According to Johnson's removal affidavit, no relative placements were available for the children. The Department sought temporary custody and temporary managing conservatorship of the children because Father was arrested for aggravated assault and would not provide the Department with relative placements and because Father "held his children in front of law enforcement while they were pointing a gun at him placing the children in harm's way." The Department believed "there is an immediate danger to the physical health and safety of the child[ren] and that continuation in the home would be contrary to the child[ren]'s welfare."

## B.     The Department's Intervention

On June 5, 2018, the Department intervened in the child support action, seeking permanent conservatorship of the children or termination of the parent-child relationship, if the children cannot be safely reunified with either parent.[2] Johnson's

---

[2] The petition sought termination of Father's parental rights under predicate grounds of, *inter alia*, endangering conduct, constructive abandonment, and failure to comply with a family

4

removal affidavit, detailing the referral and investigation described above, was attached to the petition. After a hearing, the Department was named temporary managing conservator of the children, and the court ordered the children removed from Father's home and placed in a foster home.[3] The children have lived in the same foster home since being removed from Father's home.

## C. The Family Service Plan ("FSP")

The Department created an FSP for Father on August 13, 2018. In the FSP, the Department identified the following concerns, among others, with Father's parenting. Both children were under the age of three and could not protect themselves from harm or provide themselves with necessities, such as food or shelter. Father "demonstrated an inability to properly care for [the] children as evidenced by his . . . becoming violent in front of the children and brandishing a weapon t[o] law enforcement and neighbors while using the oldest child as a shield." Father's home was in "deplorable condition" when Father was arrested by police; it reeked of garbage and rotten food and was infested with insects. Father refused to provide the Department with any relative placements.

Among other goals, Father needed to achieve the following to reduce the identified risks to the children: (1) demonstrate an understanding of and ability to provide for the children's special needs; (2) demonstrate the willingness and ability to protect the children from harm; (3) show the ability to parent and protect the children, as well as show he could cope with the daily stresses of parenting; (4) show he understood the circumstances that led to his arrest and how it placed the children in danger; (5) show he could protect the children from future abuse or neglect;

---

service plan. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (O).

[3] The children were removed from S.L.'s care after the Department determined they were not safe with her.

5

(6) show he could maintain safe housing for the children and provide for their essential needs; and (7) cooperate fully with the FSP.

To achieve these goals, the FSP identified a number of tasks or services that Father was required to complete to reunite with the children, such as: (1) complete a batterer's intervention program to learn alternatives to violence and coping skills; (2) participate in anger management classes and provide a certificate of completion; (3) complete parenting classes; (4) provide his caseworker with proof of monthly income; (5) complete a psychological evaluation and follow all recommendations made; (6) abstain from criminal conduct; (7) complete a substance abuse assessment and follow all recommendations; (8) submit to random drug and alcohol testing; (9) cooperate with the Department and maintain contact with his caseworker; and (10) maintain safe and stable housing. The FSP stated that Father's progress would be judged by whether he completed the FSP's tasks and goals and whether he could provide for the ongoing safety and well-being of the children. It further warned Father that if he was unable or unwilling to comply with the FSP to provide the children with a safe environment, his parental rights could be restricted or terminated.

On August 29, 2018, the court held a status hearing and signed a status order. Father's appointed counsel was present. The court found that Father had reviewed the FSP and understood it. The court approved Father's FSP and incorporated it into the status order, making it a court ordered plan. Thereafter, the court reviewed Father's performance under the FSP in numerous permanency orders, finding in several orders that Father was not complying with the plan. For example, a July 29, 2022 permanency report noted that Father was "unwilling to participate in services."

6

## D.    The Trial

This case was tried to the bench over three days:  December 4, 2019,[4] December 16, 2021,[5] and August 3, 2022.  Mother appeared at trial, but she ultimately executed an affidavit of relinquishment of parental rights.  Father did not appear at trial, although his counsel was present and stated that Father was aware of the settings and chose not to appear.[6]  According to counsel, Father stated he did not want to participate in any legal proceedings, including a scheduled mediation, and he wanted the children returned to Mother.

On the second day of the trial, a Department caseworker testified regarding the children's removal, and the court admitted the removal affidavit detailing the May 2018 incident.  Additionally, the caseworker described Father's FSP, listing the tasks and services Father was ordered to perform.  The court admitted the FSP and the order approving the plan into evidence.  The caseworker testified, "[t]he father has all services outstanding at this time."[7]  At trial, it was entirely undisputed that Father did not complete *any* of the tasks or services identified in his FSP.

---

[4] After trial was commenced on December 4, 2019, it was recessed and set to resume on January 22, 2020.  On January 22, the trial court's docket sheet reflects that trial was continued to March 11 to permit the parties to mediate and for the foster parents to intervene.  Trial did not resume until December 16, 2021.

[5] At the end of this trial date, the Department rested as to Father.  The Department indicated, at that time, that it sought to terminate Father's parental rights for failure to comply with the FSP, noting that "no one has disputed that father has not completed his plan of service and does not wish to have the children returned."

[6] Father pleaded guilty to the assault offense arising out of the incident with his neighbor and was incarcerated for that offense.  However, he was no longer incarcerated when the trial began, and his counsel stated on the first day of trial that her understanding was that Father was "working out of state," although counsel gave him "plenty of notice and advice to be here."

[7] On the final day of trial, the Department's caseworker testified that Father still had not completed any of the services assigned in his FSP.

7

On August 17, 2022, the trial court signed a final decree of termination. The court terminated Father's parental rights on the predicate grounds of constructive abandonment and failure to comply with his FSP. Further, the trial court found that termination was in the children's best interest.

Father timely appealed.

## Analysis

Father presents two issues for review. He challenges the legal and factual sufficiency of the evidence to support the predicate grounds for termination—constructive abandonment in his first issue and failure to comply with the court-ordered service plan in his second issue. We begin our analysis with the appropriate standards of review.

### A.    Standards of Review

In a proceeding to terminate the parent-child relationship under Family Code section 161.001, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of section 161.001(b) and that termination is in the best interest of the child under subsection (2). *See* Tex. Fam. Code § 161.001; *In re N.G.*, 577 S.W.3d at 232; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re of J.F.-G.*, 627 S.W.3d 304, 310 (Tex. 2021); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *See In re A.C.*, 560 S.W.3d 624, 629 (Tex. 2018); *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Due to the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See* Tex.

8

Fam. Code § 161.001; *In re J.F.-G.*, 627 S.W.3d at 310; *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *In re A.C.*, 560 S.W.3d at 630; *see also In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the challenged finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *See id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). However, this does not mean that we must disregard all evidence that does not support the finding. *In re D.R.A.*, 374 S.W.3d at 531. Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

In reviewing the factual sufficiency of the evidence under the clear-and-convincing standard, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631; *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or

conviction, then the evidence is factually insufficient." *In re J.O.A.*, 283 S.W.3d at 345 (internal quotation omitted). We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

To affirm a termination judgment on appeal, an appellate court need uphold only one termination ground, even if the trial court based the termination on more than one ground. *See In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam); *In re L.M.*, 572 S.W.3d 823, 832 (Tex. App.—Houston [14th Dist.] 2019, no pet.). In today's case, we conclude there is legally and factually sufficient evidence to support the trial court's finding that Father failed to comply with his FSP, *see* Tex. Fam. Code § 161.001(b)(1)(O), so we cabin our discussion to that basis for termination of Father's parental rights.

## B.    Failure to Comply with the FSP

To terminate parental rights pursuant to subsection (O), the Department must show that (1) the child was removed under chapter 262 of the Texas Family Code for abuse or neglect, (2) the child has been in the managing conservatorship of the Department for at least nine months, and (3) the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child." Tex. Fam. Code § 161.001(b)(1)(O). Father does not dispute that the children had been in the Department's custody for at least nine months. The main thrust of Father's argument supporting this issue is that the Department did not provide sufficient evidence of the first prong—that the children were removed for abuse or neglect. However, he initially makes several subsidiary arguments, so we briefly address those first.

Father first asserts that he "was incarcerated at the onset of the Petition filed by the Department, and therefore, he was unable to comply with the specific

10

provisions of the court order." We construe this statement as an attempt to invoke the defense provided by subsection 161.001(d). *See* Tex. Fam. Code § 161.001(d). Section 161.001(d) allows an affirmative defense against the Department's attempt to terminate parental rights for failure to follow FSP terms. That subsection provides:

> (d) A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that:
>
> > (1) the parent was unable to comply with specific provisions of the court order; and
> >
> > (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

*Id.* "Section 161.001(d) places the burden on the parent to prove by a preponderance of the evidence that []he was unable to comply with the court-ordered service plan, []he made a good faith effort to comply with the order, and [his] failure to comply is not attributable to any fault of [his] own." *In re L.E.R.*, 650 S.W.3d 771, 787-88 (Tex. App.—Houston [14th Dist.] 2022, no pet.). We reject Father's reliance on this defense because he did not assert the defense in his pleadings or during trial and provided no evidence to support it. *See id.*[8] Thus, the defense cannot be raised for the first time on appeal.

Father next argues that he "did not sign the Family Service Plan filed with the Court on August 20, 2018, and that the FSP "does not show that [Father] was ever provided a copy of the Service Plan. . . ." That he did not sign the FSP does not render the evidence insufficient to support the trial court's failure to comply finding. Instead, when a parent does not sign an FSP, it becomes effective once ordered by

---

[8] A party waives a section 161.001(d) defense by failing to plead it. *See In re N.B.*, No. 12-22-00236-CV, 2022 WL 16843243, at *3 (Tex. App.—Tyler Nov. 9, 2022, no pet.) (mem. op.).

the trial court. *See* Tex. Fam. Code § 263.103(d)(2); *In re L.L.N.-P.*, No. 04-18-00380-CV, 2018 WL 6069853, at \*2 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (mem. op.) (overruling parent's complaint that evidence was insufficient to support trial court's finding of failure to comply under subsection 161.001(b)(1)(O) because parent never signed his FSP). The FSP became an order of the court on August 29, 2018. As to Father's argument that he was not provided a copy of the FSP, he provided no evidence to support his claim and the trial court found that he understood the FSP when the court incorporated the plan into its order.

Father asserts that, "at the time that the Family Service Plan was filed with the Court, [he] had not yet been adjudicated the father of the children." Father's paternity was adjudicated on December 12, 2018, several months after his FSP became an order of the court. Father, however, did not deny he was the children's father; indeed, when he was interviewed as part of the Department's investigation into the May 2018 referral, he claimed that the children were his and that he "loves his boys." Moreover, Father provides no argument or authority suggesting that the Family Code requires an adjudication of paternity before an FSP can be created and court ordered. Even so, Father had several years to complete his FSP after being adjudicated the children's father, yet he did not complete a single task or engage in any of the required services.

We turn to the merits of Father's legal and factual sufficiency challenge to the trial court's finding that he failed to follow the FSP. Tex. Fam. Code § 161.001(b)(1)(O). He disputes only the first element: whether there is legally or factually sufficient evidence that the children were removed as a result of abuse or neglect. Upon full review of the record, however, we conclude that the trial court's finding withstands Father's evidentiary sufficiency arguments.

12

The words abuse and neglect are "used broadly" in the context of subsection (O) and "necessarily include[] the risks or threats of the environment in which the child is placed." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). Thus, if a parent has neglected or "otherwise endangered [his] child's physical health or safety," such that initial and continued removal are appropriate, the child has been removed from the parent under chapter 262 for the abuse or neglect of the child. *See id.*

Here, the Department's caseworker testified regarding the Department's initial involvement with Father and the children:

> The referral came in May of 2018, and custody was given in June of 2018. . . . So there were neglectful supervision allegations, physical abuse allegations, as well as physical neglect allegations in regards to the father. The father went to a neighbor's home with a pistol and then returned to his home. Law enforcement was called, and the father used the children in the subject of this case matter . . . . as a shield.

The removal affidavit, filed in support of the Department's original petition, details the May 2018 incident that led to the referral. The affidavit provides that, after Father and his neighbor had an altercation, Father went to the neighbor's apartment, let himself in, and, waving a gun, threatened the neighbor's life. The neighbor called the police, and when officers arrived, Father refused to come out of his apartment and held one of his children up, telling the officers that they could not shoot him because he was holding his child. When Father eventually came out, after an approximate two-hour stand-off, he carried one of his children in his arms, shielding himself from officers with guns drawn and aimed at him. And when officers entered Father's apartment, they discovered rotten food, garbage, and an insect infestation.

After an adversary hearing, the court found sufficient evidence to satisfy a person of ordinary prudence and caution that there was a continuing danger to the

13

physical health or safety of the children and that remaining in the home was contrary to the children's welfare. Father did not challenge those findings.[9]

The Department's evidence and the trial court's orders establish that the children were removed from Father under chapter 262 for abuse or neglect. Specifically, Father demonstrated an inability to properly care for the children as evidenced by the May 2018 incident, in which he forced entry into his neighbor's apartment, confronted his neighbor while brandishing a gun, yelled at police officers who responded to his neighbor's report of the confrontation, and repeatedly used his children as human shields during his roughly two-hour stand-off with the officers. Father's home was also in "deplorable condition" when Father was arrested by police. The evidence and orders establish that the children were removed from Father under chapter 262 for abuse or neglect. *See e.g.*, *id.* at 248-49; *In re S.N.*, 287 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that affidavit, family service plan, and temporary orders showing danger to physical health or safety and "substantial risk of continuing danger" supported finding that children were removed under chapter 262 for neglect); *In re J.S.G.*, No. 14-08-00754-CV, 2009 WL 1311986, at *6-7 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.) (relying on caseworker's affidavit in support of the Department's removal request, as well as trial court's temporary orders concluding that the children faced a danger to their physical health or safety and a substantial risk of a continuing danger if returned home, to conclude that the evidence established that the children were removed "as a result of neglect"); *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (considering affidavit in support of removal and trial court's temporary orders

---

[9] *See In re E.C.R.*, 402 S.W.3d at 248 & n.8 (noting that mandamus relief is available to challenge trial court's findings in support of removal).

14

finding "continuing danger to the physical health or safety of the child if returned to the parent" as evidence that child was removed because of neglect).

Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that termination of Father's parental rights was justified under Family Code section 161.001(b)(1)(O). Further, in view of the entire record, we conclude that the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(O). Accordingly, we conclude the evidence is legally and factually sufficient to support the 161.001(b)(1)(O) finding.

We overrule Father's second issue. Because there is legally and factually sufficient evidence to support termination under section 161.001(b)(1)(O), we need not address Father's challenge to the sufficiency of the evidence of constructive abandonment under section 161.001(b)(1)(N).

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
       Justice


Panel consists of Justices Wise, Jewell, and Poissant.

15